**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**JOHN FITZGERALD**                                                    **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 4:03CV107-P-D**

**EQUICREDIT CORPORATION OF AMERICA;**                    **DEFENDANTS**
**BANK OF AMERICA CORPORATION**
**NATIONSCREDIT FINANCIAL SERVICES**
**CORPORATION; WHOLESALE MORTGAGE,**
**INC.; AND MORTGAGE STOP, INC.**

**ORDER CERTIFYING SETTLEMENT CLASS, APPROVING
CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES**

THIS CAUSE having come on to be heard before the undersigned at the fairness

and final approval hearing (the "Fairness Hearing") on May 19, 2005 at 9:30 a.m., which

date for the Fairness Hearing was previously set by the Court, and upon the Plaintiffs'

motion for an order of final approval of the settlement agreement, certification of the

class for settlement purposes only and application for attorneys' fees and expenses.

Appearances were made on behalf of the Plaintiffs by Lawrence E. Abernathy, III, of the

Law Offices of  Lawrence E. Abernathy, III, Frank S. Thackston and C. W. Walker, III,

Lake Tindall LLP, who were previously certified as class counsel in the *Order of*

*Preliminary Approval* dated November 29, 2004 (the "Preliminary Approval Order") and

by Barry W. Gilmer and Reid S. Bruce, Gilmer Law Firm, as additional class counsel

(all, sometimes collectively "Class Counsel"), and on behalf of the Defendants Bank of

America, N.A., Bank of America Corporation (collectively, the "Bank of America"),

EquiCredit Corporation of America ("EquiCredit") and NationsCredit Financial Services

Corporation ("NationsCredit") (Bank of America, EquiCredit and NationsCredit, sometimes collectively, the "EquiCredit Defendants") by Andrew L. Sandler and Benjamin B. Klubes of Skadden Arps Slate Meagher & Flom, LLP and H. Hunter Twiford, III, McGlinchey Stafford PLLC. Appearances were also made by various class members, including the Representative Plaintiffs. The Court has carefully reviewed the evidence and testimony adduced at the Fairness Hearing and the parties' written submissions, and has considered the oral and written arguments on the motions, and being prepared to rule, the Court hereby makes the following findings of fact and conclusions of law.

## I. FINDINGS

### A. Procedural History of the Litigation

On December 31, 2002, Joyce Watson, Evelyn Taylor and John Fitzgerald, by their attorneys Lake Tindall LLP filed an action against EquiCredit Corporation of America, Bank of America Corporation and NationsCredit Financial Services Corporation, Wholesale Mortgage, Inc. and Mortgage Stop, Inc. in the Circuit Court of Leflore County, Mississippi in Cause No. 2002-0262-CICI. The matter was removed to the United States District Court for the Northern District of Mississippi, Greenville Division, by the EquiCredit Defendants on February 13, 2003. Evelyn Taylor was dismissed as a party plaintiff from this case by order of this Court dated September 22, 2003 [29-1], and Joyce Watson was dismissed as a party plaintiff by order of this Court dated April 21, 2004 [37-1]. The remaining plaintiff, John Fitzgerald ("Fitzgerald"), filed his amended class action complaint (the "Amended Complaint") on October 19, 2004 [49-1], amending his initial complaint, pursuant to an order granting leave to file the amended class action complaint executed by the Magistrate Judge assigned to this

case on October 12, 2004 [47-1]. The defendant Wholesale Mortgage, LLC was dismissed by order of the Court dated November 4, 2004 [52-1]. Fitzgerald has filed his motion to dismiss the defendant Mortgage Stop, Inc. (96-1), and has submitted an agreed order of dismissal without prejudice to the Court for execution and entry. Accordingly, the Court treats Mortgage Stop as if it had been dismissed and addresses no matters involving Mortgage Stop herein.

On November 17, 2004, Fitzgerald filed his motion for an order of preliminary approval of the amended settlement agreement [53-1] and simultaneously filed the amended settlement agreement [54-1] (the "Amended Settlement Agreement"), also dated November 17, 2004. Following a hearing on the matter, the Court entered its *Order of Preliminary Approval* dated November 29, 2004, filed November 30, 2004 [55-1]. The Preliminary Approval Order preliminarily approved the Amended Settlement Agreement, and took certain other actions as are described therein.

The parties subsequently executed a supplemental settlement agreement (the "Supplemental Settlement Agreement") [101-1], filed in this action on May 18, 2005. The Amended Settlement Agreement and the Supplement Settlement Agreement are sometimes collectively referred to as the "Settlement Agreement" in this Order.

The Preliminary Approval Order provided for the appointment of John Fitzgerald as the Representative Plaintiff of the Borrower Class and as the Representative Plaintiff of the Payee Subclass. In the Supplemental Settlement Agreement, Hester Lee Henderson was added as an additional Borrower Class Representative Plaintiff, and William and Alice Butler and Curtis and Barbara Readus were added as additional Payee Subclass Representative Plaintiffs. The Court hereby approves the additional

Representative Plaintiffs, so that the Representative Plaintiffs for the Borrower Class are hereby determined to be John Fitzgerald and Hester Lee Henderson, and the Representative Plaintiffs for the Payee Subclass are hereby determined to be John Fitzgerald, William and Alice Butler, and Curtis and Barbara Readus.

The law offices and firms of Lawrence E. Abernathy and Lake Tindall LLP were appointed as Class Counsel in the Amended Settlement Agreement and in the Preliminary Approval Order. The Supplemental Settlement Agreement added the Gilmer Law Firm as additional Class Counsel. The Court hereby approves the addition of the Gilmer Law Firm, so that Class Counsel now consists of Lawrence E. Abernathy, III, Lake Tindall LLP and the Gilmer Law Firm.

The EquiCredit Defendants have denied and continue to deny the allegations of any wrongdoing made by the Plaintiffs in the Amended Complaint, and deny any liability under federal or state law or that the Plaintiffs are entitled to any relief sought therein. The EquiCredit Defendants maintain that they have conducted all of their business dealings with the Representative Plaintiffs and with all other members of the Borrower Class and the Payee Subclass in a proper and lawful manner in all respects. The EquiCredit Defendants also believe that they have counterclaims against certain members of the Class based on their actions or defaults.

All parties and their counsel recognize that, in the absence of an approved settlement, they face a long litigation course, including motions to dismiss, motions for and challenges to class certification, extensive additional formal discovery, motions for summary judgment, trial, and potential appellate proceedings, all of which will consume significant additional time and resources, and present them with ongoing litigation risks

and uncertainties. The parties wish to avoid these risks and uncertainties, as well as the consumption of additional time and resources, through settlement pursuant to the terms and conditions of the Settlement Agreement. Class Counsel believe that the terms of the Settlement Agreement are fair, reasonable and adequate for the Class Members, and in their best interests, and the EquiCredit Defendants wish to bring the litigation to a conclusion on the terms set forth in the Settlement Agreement.

Without any admission or concession by the EquiCredit Defendants of any liability or wrongdoing with respect to the allegations made or which could have been made in the Amended Complaint, all claims of the Class Members shall be finally and fully compromised, settled and released, and this action dismissed with prejudice, upon and subject to the terms and conditions of the Settlement Agreement, which were the subject of extensive negotiations between and agreement by the parties, and subject to the terms and conditions of this Order.

Steve Tilghman of Birmingham, Alabama was appointed as Claims Administrator (the "Claims Administrator") (Preliminary Approval Order, ¶9) and has acted as such throughout this litigation. The Court has received and considered the Affidavit of Mr. Tilghman and the exhibits and attachments thereto as part of the Fairness Hearing.

This Court has subject matter jurisdiction over the Representative Plaintiffs' individual and class claims. The Court has personal jurisdiction over the named Plaintiffs, including the Representative Plaintiffs for the Borrower Class and the Representative Plaintiffs for the Payee Subclass, all Borrower Class members, all Payee Subclass members and the EquiCredit Defendants.

The prerequisites for a class action for the Borrower Class under FED. R. CIV. P.

23(a) and (b)(3) have been satisfied in that: (a) the number of Borrower Class members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Borrower Class Representative Plaintiffs are typical of the claims of the class they seek to represent; (d) the Borrower Class Representative Plaintiffs have and will fairly and adequately represent the interests of the class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Borrower Class was, in the Preliminary Approval Order, provisionally certified under FED. R. CIV. P. 23(b)(3) for settlement purposes only, as a class comprised of all persons to which the EquiCredit Defendants originated (either directly or through a broker) a loan, secured, in whole or in part, by residential real property located in the State of Mississippi, between January 1, 1998 and December 31, 2001. The Borrower Class does not include any present and former employees of the EquiCredit Defendants and their relatives, any individual for whom such claims against the EquiCredit Defendants are barred by a judgment or have been released, or any individual who filed for bankruptcy after loan origination and was discharged who failed to list as an asset his or her claims in this action or whose listed claims were not abandoned to them by their trustee. The Borrower Class does not include the following two groups: (1) any individual whose loan was (i) secured by a mobile home; (ii) originated by NationsCredit's national dealer channel and (iii) who did not receive an application through a NationsCredit branch in Mississippi; and (2) any individual whose loan was

originated by NationsCredit between January 1, 1998 and November 1, 1998 without credit life insurance, and which was paid in full or sold during that time period. The Borrower Class, as defined, includes all members of the Payee Subclass.

The members of the Borrower Class can and have been identified from the records of the EquiCredit Defendants. There are approximately 2,350 borrowers in the Borrower Class. It would be impractical to join so many borrowers as named parties.

The claims of the Borrower Class Representative Plaintiffs are typical of the claims of members of the Borrower Class, and are common to the members of the Borrower Class. The Representative Plaintiffs claim, in the amended complaint asserting class allegations, that the EquiCredit Defendants targeted certain Mississippians to make high interest rate "subprime" residential real estate loans to these "targeted borrowers" and that the EquiCredit Defendants utilized predatory lending practices, including charging excessive fees and points, improperly inducing borrowers to purchase credit insurance in connection with their loans, charging brokers' fees in excess of the statutory minimums, and subjecting borrowers to unreasonable and oppressive collection tactics, either directly or through the alleged agents of the EquiCredit Defendants. The Representative Plaintiffs seek damages for these alleged wrongs. Class Members will benefit from the relief the Representative Plaintiffs seek on their behalf.

The Borrower Class Representative Plaintiffs have adequately represented the class. Their interests do not diverge from those of the Borrower Class members.

All of the members of the Payee Subclass are also members of the Borrower Class, and as such, the Payee Subclass meets all of the requirements of FED R. CIV. P. 23 (a) in the same way as does the Borrower Class. The prerequisites for a class action for

the Payee Subclass under FED R. CIV. P. 23 (b) (2) have likewise been met, in that the Representative Plaintiffs allege that the EquiCredit Defendants have acted or refused to act on grounds generally applicable to the Payee Subclass, which would thereby make appropriate final injunctive relief and the corresponding declaratory relief with respect to the Payee Subclass as a whole.  Although some monetary relief is provided to members of the Payee Subclass by the Settlement Agreement, the predominant relief sought by the Plaintiffs is injunctive or declaratory in nature, and the monetary relief is only incidental to the requested predominant equitable relief. The Payee Subclass was provisionally certified in the Preliminary Approval Order as a non-opt-out subclass pursuant to FED. R. CIV. P. 23(b)(2) for settlement purposes only.  The Payee Subclass is comprised of all persons to whom EquiCredit or NationsCredit originated, either directly or through a broker, a loan, secured, in whole or in part, by residential real property located in the State of Mississippi, between January 1, 1998 and December 31, 2001 from which an agent of the EquiCredit Defendants allegedly misapplied certain loan proceeds.  The Payee Subclass does not include present or former employees of the EquiCredit Defendants and their relatives, or any individuals for whom such claims against the EquiCredit Defendants are barred by a judgment or have been released. The Payee Subclass does not include the following two groups:  (1) any individual whose loan was (i) secured by a mobile home; (ii) originated by NationsCredit's national dealer channel; and (iii) who did not receive an application through a NationsCredit branch in Mississippi; and (2) any individual whose loan was originated by NationsCredit between January 1, 1998 and November 1, 1998 without credit life insurance, and which was paid in full or sold during that time period.

Class Counsel and the EquiCredit Defendants previously agreed to an initial list of the members of the Payee Subclass which was appended to the Preliminary Approval Order as Exhibit 1. The Court has again reviewed the list naming the 44 agreed members of the Payee Subclass, and hereby approves the same.

Class Counsel and the EquiCredit Defendants have reviewed additional names of persons whom Class Counsel believes should be members of the Payee Subclass but whom the EquiCredit Defendants contest, and have disclosed to the Court a list of those 19 persons claimed by Class Counsel to be members of the Payee Subclass. The list of those 19 persons has been provided to the Court, and was introduced into evidence at the Fairness Hearing. The issue of whether these 19 persons and any others who subsequently claim to be members of the Payee Subclass and thus entitled to the relief granted to members of the Payee Subclass, will be determined by arbitration under the procedures set forth in the Settlement Agreement.

The claims of the Payee Subclass Representative Plaintiffs are typical of the claims of members of the Payee Subclass as provisionally certified in the Preliminary Approval Order. The Payee Subclass Representative Plaintiffs claim that EquiCredit employees, mortgage brokers or other alleged agents diverted payments from the loan proceeds to unauthorized payees, who were either entities that did not exist and to whom the borrower did not owe any money or alternatively, were legitimate creditors who were to have been paid from the closing proceeds, but who were not in fact paid, and that the funds of these borrowers were wrongfully converted to the brokers' use. The Payee Subclass Representative Plaintiffs seek damages for these alleged wrongs. The Payee Subclass members will benefit from the relief the Payee Subclass Representative

Plaintiffs seek on their behalf.

The Payee Subclass Representative Plaintiffs have adequately represented the Payee Subclass. Their interests do not diverge from those of the Payee Subclass members.

Class Counsel are law firms with substantial experience in the prosecution of conflicts similar to this class action. The terms of the proposed settlement demonstrate that the Representative Plaintiffs and their counsel have adequately represented the interests of members of the Borrower Class and the Payee Subclass.

Common questions of law and fact predominate for the purposes of settlement of this proceeding. The Amended Complaint alleges that the EquiCredit Defendants engaged in a common practice and method of doing business to the detriment of the members of the Class. For settlement purposes, this Court considers whether the proposed settlement provides fair, adequate and reasonable compensation for claims of Class members arising from this allegedly common practice and method of doing business.

All members of the Borrower Class and the Payee Subclass were, at the time of their loans, residents of the State of Mississippi. Mississippi law governs the claims of the Class members.

For the purposes of granting final approval of the Settlement Agreement, the Class, as defined, is manageable.

## C. Class Notice

The Court previously approved the form of the written notice (the "Mailed Notice") which was sent to the Borrower Class members and the Payee Subclass members and the additional written notice sent to the agreed members of the Payee

Subclass (Preliminary Approval Order, ¶11). The Court reiterates its prior findings, and hereby again finds, that the Mailed Notice fairly and adequately informed Class members of the nature of the action, the terms of the proposed settlement, the effect of the action and settlement on other actions raising similar claims, the Borrower Class members' rights to exclude themselves from this action, and the Borrower Class members' and the Payee Subclass members' rights to object to the proposed settlement.

The requirements for opting out of the Borrower Class are stated with reasonable clarity in the Mailed Notice, and are not overly complicated.

The Mailed Notice adequately describes the benefits to be paid to the Borrower Class as a whole. The Mailed Notice provides adequate examples of how the amount to be paid to an individual Borrower Class member will be calculated. Given the nature of the settlement, it would be impossible to estimate accurately the actual amount an individual Borrower Class member will receive from the settlement. Borrower Class members would not have been aided substantially by the Mailed Notice containing any additional information regarding settlement benefits.

The Mailed Notice and the supplemental notice adequately describes the relief to be granted to the members of the Payee Subclass. The Mailed Notice and the supplemental notice sent to the agreed Payee Subclass members also provide adequate examples of the relief to be granted and the methodology by which such relief will be granted to an individual Payee Subclass member.

The Mailed Notice adequately discloses the nature and scope of the release provisions of the Settlement Agreement.

The Mailed Notice adequately discloses that the Representative Plaintiffs would

seek incentive fees for themselves, an award of attorneys' fees and costs, and the amounts they would request.

The distribution of the Mailed Notice was made by First Class Mail, postage prepaid, by the Claims Administrator to Class members in substantially the form attached to the Amended Settlement Agreement as Exhibit "B", which form was previously reviewed and approved by this Court in the Preliminary Approval Order. The Mailed Notice was individually addressed to each person meeting the definition of the Borrower Class and to the agreed members of the Payee Subclass at his or her current or last known address as reflected in the records of the EquiCredit Defendants, as updated by the Claims Administrator by his use of one or more locator databases. The initial mailing occurred on December 5, 2004. A supplemental mailing by the Claims Administrator to Class members who were plaintiffs in existing lawsuits occurred on December 15, 2004. The deadline for opting out by Borrower Class members was 90 days from the date of mailing of the Mailed Notice (Preliminary Approval Order, ¶12), which was March 9, 2005.

The Mailed Notice adequately reflected that the Payee Subclass was preliminarily certified as a non-opt-out subclass pursuant to FED. R. CIV. P. 23(b)(2).

The Mailed Notice adequately reflected the date by which Borrower Class members and/or Payee Subclass Members could object to class certification, the settlement agreement, Class Counsel's requested attorneys' fees and expenses, or the proposed payment to the Representative Plaintiffs, which objection date was specified as not later than 20 calendar days before the final approval hearing (Preliminary Approval Order, ¶13), which date was April 29, 2005.

There was an adequate interval between the Mailed Notice and the opt-out deadline and between the Mailed Notice and the objection deadline so as to permit Borrower Class members and Payee Subclass members to choose what to do, and to act on their decisions.

## D. Opt-Outs and Objections

The Claims Administrator, pursuant to Paragraph 11 of the Preliminary Approval Order, mailed the Mailed Notice by First Class Mail, postage prepaid, individually addressed to each person meeting the definition of the Borrower Class and the Payee Subclass at his or her current or last known address. Following the Mailed Notice, the Claims Administrator received opt-out notices from 119 persons, of whom 59 were members of the Borrower Class, and 60 of whom fell outside the definition of Class members or for whom the EquiCredit Defendants have been unable to find a loan. All of this is reflected in the Affidavit of the Claims Administrator introduced in evidence at the Fairness Hearing.

Attached hereto as Exhibit "A" is a list of those 59 Borrower Class members who opted out in a timely fashion and whose identities could be ascertained to be Borrower Class members.

Attached hereto as Exhibit "B" is a list of those 60 persons who filed opt outs with the Claims Administrator in a timely fashion, but whose identities could not be ascertained to be Class members or whose identities could be ascertained but the borrower is not a member of the Class as defined.

There were no objections by Borrower Class members or by Payee Subclass members filed by the April 29, 2005 deadline established under Paragraph 13 of the Preliminary Approval Order.

There were no objections by Borrower Class members or Payee Subclass members filed between April 29, 2005 and May 19, 2005, the date of the Fairness Hearing.

### E. Fairness of the Settlement

Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits. *Miller v. Republic National Life Insurance Company*, 559 F.2d 426, 428 (5th Cir. 1977).

The Settlement Agreement was reached as the result of extensive arm's length negotiations between the parties. No "reverse auction" was conducted in this case. The Plaintiffs have been represented by a group of highly experienced law firms with a wide range of experience in class action litigation, including law firms which have pursued similar litigation against the EquiCredit Defendants for some years.

Sufficient investigation and discovery was accomplished to permit counsel for the parties and the Court to intelligently evaluate the proposed settlement.

The settlement is recommended by counsel for both parties. Class Counsel and counsel for the EquiCredit Defendants are highly skilled and experienced law firms which have extensive experience handling consumer claims, including class actions, and are well able to evaluate the benefits and burdens of the proposed settlement in comparison with the potential recovery, complexity, risk and delay likely if this case were to be litigated to a final conclusion.

Out of the approximately 2,350 Borrower Class members, only 59 – approximately two percent – filed valid opt-outs. There were no written objections to the settlement by Borrower Class members or by Payee Subclass members. The lack of objections and this extremely low level of opt-outs is sufficiently small to be deemed an

indication of the Class members' acceptance of the settlement as fair and adequate. *See Stoetzner v. U. S. Steel Corporation*, 897 F.2d 115, 119 (3rd Cir. 1990). This Court has a duty to the silent majority, as well as the vocal minority. *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 933 (8th Cir. 2005).

Class Counsel and the EquiCredit Defendants' counsel have represented to the Court that the Borrower Redress Fund established by the Settlement Agreement for the Borrower Class in the amount of $3 million under the Amended Settlement Agreement, to which an additional $1 million has been added under the Supplemental Settlement Agreement (but which will not be deposited into the Treatment Redress Fund until the $3,000,000 initially deposited in the Treatment Redress Fund is exhausted), for a total of $4 million to address the claims of the members of the Borrower Class. The equitable relief to members of the Payee Subclass as set forth in the Amended Settlement Agreement in the minimum amount of $3 million is a fair and adequate recompense for the claims of the Borrower Class members and Payee Subclass members. The total benefit to the Class is a Class fund of not less than $7 million with no ceiling on the Payee Subclass claims. The Court agrees with this assessment, and hereby determines that the same is fair, reasonable and adequate. While the Class members might have received more if the case were litigated to a final conclusion, they might also have received less, or even nothing at all. Many of the Class members might be barred by the applicable statute of limitations had they pursued their claims against the EquiCredit Defendants in individual lawsuits. The settlement takes into account the substantial litigation risk that the Class members face. A settlement may be approved as fair and reasonable, even if it provides substantially less than 100% of the damages the plaintiffs

seek. *Pettway v. American Cast Iron Pipe Company*, 576 F.2d 1157, 1214 fn. 69 (5th Cir. 1978); see *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court opined that compromise is the essence of settlement, proponent of a proposed settlement need not justify each term of the settlement against speculative measure of what concessions might have been gained, and inherent in compromise is a yielding of absolutes and abandoning of highest hopes). Moreover, the fact that certain members may have their benefits reduced upon the occurrence of contingencies in the settlement agreement does not render the settlement patently inadequate, unfair, or unreasonable. *See In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 933-34 (8th Cir. 2005).

The release provisions of the Settlement Agreement are fair and reasonable.

The claims made process applicable to the Borrower Class is fair and reasonable to the Borrower Class members.

The proposed methods of distributing the Borrower Treatment Redress Fund are fair to Borrower Class members and are not unduly burdensome.

The proposed methods of granting the equitable and other relief to the Payee Subclass members are fair to Payee Subclass members and are not unduly burdensome.

The Court retains jurisdiction over implementation of the settlement so that it can assure that the settlement funds are distributed appropriately.

The attorneys' fees and costs in the amount as are hereby established by the Court are fair and reasonable.

The incentive fees to be paid by the EquiCredit Defendants of $10,000 to John Fitzgerald and $10,000 to Hester Lee Henderson as Borrower Class Representative Plaintiffs are fair and reasonable.

The incentive fees to be paid by the EquiCredit Defendants of $10,000 to John Fitzgerald, $10,000 to William and Alice Butler, collectively, and $10,000 to Curtis and Barbara Readus, collectively, as Payee Subclass Representative Plaintiffs, are likewise fair and reasonable.

These incentive payments to the Class Representative Plaintiffs will be paid pursuant to the Settlement Agreement, and shall be in addition to any recovery by the members of the Borrower Class and the Payee Subclass.

Taken as a whole, the Settlement as set forth in the Settlement Agreement is fair, adequate and in the best interests of the Borrower Class and the Payee Subclass.

Each member of the Borrower Class shall be entitled, upon return to the Claims Administrator of a properly executed claims form, to the redress set forth in the Amended Settlement Agreement, as modified by the Supplemental Settlement Agreement, in the form of a single check payable to the borrower, and if applicable, jointly to the borrower and co-borrower, in the following categories, as applicable:  (a) a refund of all Points, Document Preparation Fees and Origination Fees paid to the EquiCredit Defendants on the borrowers' loan in excess of 5% of the loan amount, upon certain certifications by the borrowers, (b) a refund of the full amount of credit life insurance premiums paid on the loan, less any amount previously refunded due to cancellation of the insurance, upon certain certifications by the borrowers and certain terms and conditions as set forth in Paragraph 9(b) of the Amended Settlement Agreement, (c) payment of $500 for a single instance or $1,000 for two or more instances of alleged improper collection or servicing activities by the EquiCredit Defendants between January 1, 1998 and December 31, 2001 in connection with the borrowers' loan, upon certain certifications by the borrowers and

subject to verification by the EquiCredit Defendants, and (d) a refund of all fees paid to mortgage brokers in excess of the statutory maximum permitted to be charged by mortgage brokers in effect on the date of the loan origination, which were (i) 3% for the period between January 1, 1998 and June 30, 1999; (ii) 6 % for the period between July 1, 1999 and June 30, 2000, and (iii)  7.95% for the period between June 30, 2000 and December 31, 2001, upon certain certifications by the borrowers, pursuant to the provisions of Paragraph II (3) of the Supplemental Settlement Agreement.  The redress to be paid to the Borrower Class members is fair, adequate and in the best interests of the Borrower Class.

The Payee Subclass as defined will receive equitable and other relief as set forth in Paragraph 17 of the Amended Settlement Agreement.  Payee Subclass members who have an Open Loan as of the date of this Final Approval Order will, after the Effective Date, receive the benefit of having their loan obligation, including advances, delinquent principal and interest and late fees, completely discharged by the EquiCredit Defendants, and will also receive a payment from the EquiCredit Defendants in the amount of the principal they have paid on their loans through the forgiveness date, less any amount previously refunded due to cancellation of credit insurance, and less any advances for taxes, flood and hazard insurance and interest advances.  Additionally, Payee Subclass members who have an Open Loan (as defined in the Amended Settlement Agreement) as of the date of this Final Approval Order shall have any credit insurance cancelled, subject to the provisions of Paragraph 17(b) of the Amended Settlement Agreement.  Payee Subclass members who have a Satisfied Loan (as defined in the Amended Settlement Agreement) as of the date of this Final Approval Order will be paid via check in the

amount of the original principal balance, less any amount previously refunded due to cancellation of credit insurance. Payee Subclass members will also receive additional relief as set forth in Paragraph 17 and elsewhere in the Amended Settlement Agreement.

**F. Claims Form**

The Court has, in the Preliminary Approval Order, approved the process for the Borrower Class to make any claims as set out in Paragraph No. 8 of the Amended Settlement Agreement, under the provisions of which the Claims Administrator will forward a claims form (the "Claims Form") to each member of the Borrower Class who did not opt out of the Borrower Class, for completion and execution, under penalty of perjury, by those members of the Borrower Class who choose to complete and return the Claims Form to the Claims Administrator for processing. The Claims Administrator will provide copies of all returns Claims Forms to Class Counsel and counsel for the EquiCredit Defendants for their review and evaluation. Class Counsel and counsel for the EquiCredit Defendants will have the right to independently verify the information provided by Class members. The parties have furnished a copy of the Claims Form to the Court, which has reviewed the same. The Court hereby finds and determines that the Claims Form is reasonably clear, concise and understandable, adequately allows the Class members to make their Borrower Class claims, and comports with all requirements of law and the other agreements of the parties and the prior orders of this Court, and is hereby authorized, approved and allowed as the official Claims Form for distribution and use by the Claims Administrator. Attached hereto as Exhibit "C" is a copy of the Claims Form as approved by the Court.

## G. Other Findings

The parties have represented to the Court all agreements made in connection with the proposed settlement and compromise pursuant to the provisions of FED. R. CIV. P. 23(e)(2). The Court finds that as part of the global settlement, the EquiCredit Defendants have agreed to pay to those persons who opted out of the Borrower Class the same relief to which they would have been entitled had they remained in the Class, and to pay to counsel for the Borrower Class opt-outs an additional forty-five percent (45%) of the sums paid to the opt-outs as their attorneys' fees. The Court further finds that the EquiCredit Defendants have, pursuant to Rule 23(e)(2), disclosed to the Court that the claims of Ruby Lott made by Estella Lott, her conservator, have been fully and finally settled and compromised. Ms. Lott had filed and maintained her separate suit in the Circuit Court of Leflore County, Mississippi in Cause No. 2002-0243 CICI, which predated the class action. The prosecution of Ms. Lott's separate action was enjoined by the Preliminary Approval Order. The terms and conditions of the Lott settlement have been submitted to this Court. The Lott settlement was also previously approved by the Chancery Court of Leflore County, Mississippi in the *Matter of the Conservatorship of Ruby Lott, Estella Lott, Conservator of the Person and Estate of Ruby Lott,* Cause No. E02-0441, by Order dated May 9, 2005, a copy of which has been provided to and reviewed by this Court. The Court finds that all side deals and settlements of ancillary matters have been properly disclosed to the Court.

## H. Attorneys' Fees

FED. R. CIV. P. 23(h) provides in pertinent part that "[i]n an action certified as a class action, the Court may award reasonable attorneys' fees and nontaxable costs authorized by law or by agreement of the parties

In class action settlements, the percentage method may be used to calculate a reasonable attorney's fee when the litigant or lawyer recovers a determinate common fund for the benefit of persons other than himself or his client. *Boeing Company v. Van Gemert*, 444 U.S. 472, 478-80, 100 S. Ct. 745, 749-50 (1980). In that situation, the attorney's fee is based on a reasonable percentage of the fund, including any unclaimed portion. *Id.*, 444 U.S. at 481-82, 100 S. Ct. at 750-51; *Strong,* 137 F.3d at 852; *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 961-73 (E.D. Tex. 2000).

The matter of attorneys' fees in the instant litigation was not negotiated by the parties at all until an agreement had been reached and made as to the relief to be provided to the Borrower Class members and the Payee Subclass members.

The total value of the Borrower Class and the Payee Subclass, as set out in the Amended Settlement Agreement, is a minimum of $6 million. The Supplemental Settlement Agreement adds an additional $1 million to the Treatment Redress Fund pursuant to the provisions of Paragraph II (4) of the Supplemental Settlement Agreement. The total value of the Borrower Class and the Payee Subclass is thus a minimum of $7 million for the purpose of calculation of attorneys' fees and costs.

Class Counsel has requested an award of fees and costs of thirty-five percent (35%) of the total Settlement Relief Fund, to be determined and approved by the Court and to be paid separately from and in addition to payments to the Borrower Class and Payee Subclass members or to the Claims Administrator. The EquiCredit Defendants have announced that they have taken no position with the Court in connection with the request by Class Counsel for an award of fees and costs of up to thirty-five percent (35%)

of the total Settlement Relief Fund of $7 million.

Class Counsel have submitted substantial documentation to the Court of their efforts in pursuing the litigation, due diligence regarding documents and data obtained from the EquiCredit Defendants, and in the negotiation and implementation of the settlement of the Class, and have submitted to the Court the time expenditures and expense reports for the various law firms comprising Class Counsel. The attorneys' fees and costs in the amount determined by the Court below is fair and reasonable. In making this determination, the Court specifically finds that the following factors justify the fees and costs application: (a) the magnitude of litigation, including the complexity, scope and duration, (b) class counsel are experienced, well recognized lawyers who have provided excellent representation and have pursued an extremely fair resolution, (c) the time submissions are reasonable given the level of work involved and in light of the nature and duration of the litigation, (d) the attorneys' rates are reasonable and appropriate for attorneys of comparable skill and experience, (e) the fees and expenses do not come from the recovery to the Class members, but will be a separate payment made by the EquiCredit Defendants in addition to the class relief and (f) the award is justified under a percentage of the recovery analysis and is well within a reasonable range.

## ORDERS

Based upon the foregoing findings and conclusions, and for good cause appearing, it is therefore

**ORDERED:**

### A. Class Certification

For settlement purposes only, a Class comprised of the Borrower Class (as

defined below) and the Payee Subclass (as defined below) is hereby certified. The

Borrower Class and the Payee Subclass are defined as follows:

(a) THE BORROWER CLASS: All persons to which the EquiCredit Defendants originated, either directly or through a broker, a loan, secured, in whole or in part, by residential real property located in the State of Mississippi, between January 1, 1998 and December 31, 2001. The Borrower Class does not include any present and former employees of the EquiCredit Defendants and their relatives, any individual for whom such claims against the EquiCredit Defendants are barred by a judgment or have been released, or any individual who filed for bankruptcy after loan origination and was discharged who failed to list as an asset his or her claims in this action or whose listed claims were not abandoned to them by their trustee. The Borrower Class does not include either of the following two groups: (1) any individual whose loan was (i) secured by a mobile home; (ii) originated by NationsCredit's national dealer channel and (iii) who did not receive an application through a NationsCredit branch in Mississippi; and (2) any individual whose loan was originated by NationsCredit between January 1, 1998 and November 1, 1998 without credit life insurance, and which was paid in full or sold during that time period. The Borrower Class, as defined, includes all members of the Payee Subclass.

(b) THE PAYEE SUBCLASS: All persons to whom EquiCredit or NationsCredit originated, either directly or through a broker, a loan, secured, in whole or in part by residential real property located in the State of Mississippi, between January 1, 1998 and December 31, 2001 from which an agent of the EquiCredit Defendants allegedly misapplied certain loan proceeds. The Payee Subclass shall not include present or former employees of the EquiCredit Defendants and their relatives, any individuals for whom such claims against the EquiCredit Defendants are barred by a judgment or have been released. The Payee Subclass does not include either of the following two groups: (1) any individual whose loan was (i) secured by a mobile home; (ii) originated by NationsCredit's national dealer channel; and (iii) who did not receive an application through a NationsCredit branch in Mississippi; and (2) any individual whose loan was originated by NationsCredit between January 1, 1998 and November 1, 1998 without credit life insurance, and which was paid in full or sold

during that time period.

The law firms of Lawrence E. Abernathy, III, Lake Tindall, LLP, and Gilmer Law Firm shall continue as counsel for the Class. The law firms of Lawrence E. Abernathy, III and Lake Tindall shall continue as co-lead counsel for the Class.

## B. Class Notice

The Court hereby re-approves the Mailed Notice as the Class Notice previously mailed to the Borrower Class members and Mailed Notice and supplemental notice previously mailed to the Payee Subclass members. The Court hereby further finds and determines that the notices fully and accurately informed Class members of all material elements of the action, proposed settlement and their alternatives with respect to the same, and that the notices constituted valid, due and sufficient notice of all Borrower Class members and Payee Subclass members, as well as the best notice practicable under the circumstances.

Based upon the Amended Settlement Agreement and Supplemental Settlement Agreement, the declarations of the Claims Administrator and the other evidence and testimony adduced at the Fairness Hearing, the Court is satisfied that appropriate efforts to identify and locate the members of the Settlement Class were made.

## C. Final Approval

The Court hereby finally approves the Settlement Agreement, consisting of the Amended Settlement Agreement and Supplemental Settlement Agreement, and finds that the settlement is fair, adequate and in the best interests of the Borrower Class members and the Payee Subclass members.

The Court hereby orders the parties to perform their obligations pursuant to the Amended Settlement Agreement and the Supplemental Settlement Agreement and this

Final Approval Order.

## D.  Validity of Opt-Outs

The Court hereby voids any requests for exclusion which were not received by the Claims Administrator or postmarked as of March 9, 2005.

## E.  Release of Claims

The Amended Complaint and all claims and causes of action asserted therein or which could have been asserted therein are hereby dismissed on the merits and with prejudice as to the named Plaintiffs and all Borrower Class members, other than those who have submitted timely, valid opt-out requests, and all members of the Payee Subclass.  This dismissal is without cost to any party except as specifically provided in the Settlement Agreement.

The named Plaintiffs and all Borrower Class Members, other than those who have submitted timely, valid opt-out requests, and all Payee Subclass members are bound by the release provisions contained in Paragraph VI (29) and (30) of the Amended Settlement Agreement, and to the extent there provided, have released and discharged the EquiCredit Defendants and all other releasees from any and all claims as set forth in Paragraph 29 of the Amended Settlement Agreement.

The Court bars and permanently enjoins the Representative Plaintiffs and all Borrower Class members, other than those who have submitted timely, valid opt-out requests, and all members of the Payee Subclass from asserting, instituting or prosecuting, either directly or indirectly, any claims released pursuant to the Settlement Agreement.

## F.  Attorneys' Fees and Costs

The Court approves the award of attorneys' fees and costs in the total amount of $2,450,000.00, said sum to be paid only after the parties' provide the Court with a final report on the status of the distribution of redress to the Borrower class and Payee subclass respectively. The attorneys' fees and costs hereby awarded shall be in addition to any recovery by the Settlement Class.

The award of attorneys' fees shall be allocated among Class Counsel in a fashion which, in the sole discretion of Co-lead Counsel, fairly compensates Plaintiffs' counsel for their respective contributions in the prosecution of this litigation.

The incentive payments to the Borrower Class Representative Plaintiffs John Fitzgerald and Hester Lee Henderson of $10,000 to each, and to the Payee Subclass Representative Plaintiffs John Fitzgerald of $10,000, William and Alice Butler of $10,000 total, and Curtis and Barbara Readus in the amount of $10,000 total, are hereby authorized and approved, and are hereby ordered to be paid pursuant to the Settlement Agreement, and shall be in addition to any recovery by the Settlement Class.

### G. Other Provisions

Neither this Order, the Amended Settlement Agreement, nor the Supplemental Settlement Agreement are an admission or concession by the EquiCredit Defendants of any fault, omission, liability or wrongdoing. This Order is not a finding of the validity or invalidity of any claims in this class action litigation or a determination of any wrongdoing by the EquiCredit Defendants. The final approval by this Court of the Amended Settlement Agreement or the Supplemental Settlement Agreement does not constitute any opinion, position or determination of this Court, one way or the other, as to the merits of the claims of the Representative Plaintiffs, the Borrower Class members or

the Payee Subclass members, or defenses of the EquiCredit Defendants.

Neither this Order, the Amended Settlement Agreement, nor the Supplemental Settlement Agreement or any of the terms and provisions thereof, nor any of the negotiations and proceedings connected with the Settlement Agreement nor any of the documents or statements referred to herein shall be: (a) offered or received against the EquiCredit Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession or admission by the EquiCredit Defendants or any of them with respect to the truth of any fact alleged by the Plaintiffs or the validity of any claim that has been or could have been asserted in this litigation or in any other litigation, or the deficiency of any defense that has been or could have been asserted in this litigation or in any other litigation, or of any liability, negligence, fault or wrongdoing of the EquiCredit Defendants; (b) offered or received against the EquiCredit Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the EquiCredit Defendants or their officers, employees, former employees, agents or other releasees, or against the Representative Plaintiffs and the Class as evidence of any infirmity in the claims of the Plaintiffs and the Class; (c) offered or received against the EquiCredit Defendants or against the Representative Plaintiffs or the Class as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or any way referred to for any other reason against any of the parties to the Settlement Agreement, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement and this Order; provided, however, that the EquiCredit Defendants

may refer to the Settlement Agreement and this Order to effectuate the liability protection granted them thereunder; (d) construed against the EquiCredit Defendants or the Representative Plaintiffs and the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or (e) construed as or received in evidence as an admission, concession or presumption against the Representative Plaintiffs or the Class or any of them that any of their claims are without merit or that damages recoverable under the Amended Complaint would not have exceeded the amount of the settlement.

The parties and their counsel have complied with the requirements of FED. R. CIV. P. 11 as to all proceedings had herein.

The Amended Settlement Agreement contains certain non-disparagement and other provisions which have been reviewed and approved by this Court, and the parties are hereby ordered to comply with the provisions thereof.

The parties will use their good faith efforts to cause the redress to be fully and completely provided to the members of both the Borrower Class and the Payee Subclass to which they are entitled under the provisions of the Settlement Agreement and this Order on or before October 1, 2005, subject to an extension of that deadline based upon unforeseen circumstances which may cause the parties to be unable to meet that deadline. The parties will report the October 1, 2005 status of the distribution of redress to the Class members to the Court by October 10, 2005.

Without further order of this Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

### H. Continuing Jurisdiction

Without affecting the finality of this Order in any manner, the Court retains jurisdiction over: (a) implementation and enforcement of the Settlement Agreement pursuant to further orders of the Court, until such time as the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement, including the payments from the Treatment Redress Fund and the relief to be granted to the Payee Subclass members, (b) any other action necessary to conclude this settlement and implement the Settlement Agreement, (c) the enforcement, construction and interpretation of the Settlement Agreement, including but not limited to, any disputes concerning Borrower Class members' or Payee Subclass members' release of claims, and (d) the determination of validity of opt-outs, if called upon to make that judicial determination.

The Court finds that no just cause exists for delay in entering this Order. Accordingly, the Clerk is hereby directed forthwith to enter this Order pursuant to FED. R. CIV. P. 54 (b).

**SO ORDERED** on this, the 7th day of June, 2005.

/s/ W. Allen Pepper, Jr.

W. ALLEN PEPPER, JR.

UNITED STATES DISTRICT JUDGE